# MEMORANDA

OF

## CASES NOT REPORTED IN FULL.

JOSEPH PRATT, PLAINTIFF IN ERROR, v. THE PEOPLE OF
THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Purpresture — order laying out highway — record of, how impeached — The survey —
must be incorporated into the order.*

THE plaintiff in error was indicted in the Jefferson county Oyer
and Terminer for unlawfully obstructing a public highway, or street,
in the village of Carthage in said county. Having been convicted
and sentenced in the Court of Sessions, to which the indictment
was sent, he sued out a writ of error and removed the record into
this court.

The highway in question commenced in the margin of Furnace
street, in said village, near the terminus of Water street, and after
crossing a pond that separated an island in the Black river on which
a saw-mill, now owned by the plaintiff in error, and a grist and saw-
mill of one Guyot stood, from the main land it extended to a point
near the grist-mill of said Guyot; a bridge was constructed by the
commissioner of highways of the town of Wilna, in which said vil-
lage of Carthage is located, over said pond.

The plaintiff in error erected an office and barn within the limits
of the said highway and piled logs and lumber therein, and these
constituted the obstructions in the highway for which the indict-
ment was found.

To prove that the *locus in quo* was a public highway the district
attorney proved that in August, 1858, Sanford Lewis, Wm. D.
Levis and Charles Sarvoy were commissioners of highways of the
town of Wilna, and that a paper produced had been taken from the

office of the town clerk of said town and that the signatures to said paper were in the handwriting of said commissioners.

The paper thus produced is marked as filed February 1, 1859, in the handwriting of the then town clerk of said town. The following is a copy of the contents of said paper, viz.:

"A survey of a road or street from Furnace street to Guyots & Davis Mills, beginning at a hub on the northerly margin of Furnace St. 25 links easterly from the point where the easterly margin of Water street intersects with the northerly margin of Furnace street, thence in a direct line towards the S. Ely corner of Guyot's grist-mill N. 45½ west 2 chs 21 lks to a hub 57 lks S. 45¼ E. from said S. Ely corner of said grist-mill as surveyed by A. Brown, August 30th, 1858.

The above street is to be three rods wide.

(Signed.)   SANFORD LEWIS,<br>
WM. D. LEVIS,<br>
CHARLES SARVOY,<br>
*Commissioners of Highways.*"

The signatures are not on the same paper as the survey, but upon a piece of somewhat different color and of inferior quality and annexed to the survey by three wafers.

Upon the trial two of the commissioners were called and gave evidence tending to show that they had never signed the paper when attached to the survey, and had never authorized it to be so attached, and that no meeting had ever been called to lay out the highway, and that in fact it never had been laid out. Plaintiff's counsel claimed that their testimony in connection with the appearance of the paper was sufficient to impeach it as a record, and that there was, therefore, no evidence to show that the *locus in quo* was a public highway. The trial court held the paper sufficient to show that the highway had been laid out.

The court at General Term said: "Assuming that the paper found on the files of the town clerk was presumptive evidence of the laying out of the highway in question, it was but presumptive evidence and it was competent for any person interested to prove that it was not legally laid out and thus overcome the presumption.

First. The appearance of the paper was some evidence against its

genuineness. The names of the commissioners were signed, not upon the same paper on which the survey was written, although there was ample room on the back of it for the names of the commissioners. The paper on which the names were written was of a somewhat different color from that on which the survey was written, and was of an inferior quality and was annexed to the survey with wafers.

Second. One of the commissioners swears positively that he never saw or heard of the survey until the day before the trial of the plaintiff in error upon the indictment, and that, although his signature to the paper is genuine, he never signed it connected with the survey, and never attended a meeting of the commissioners when an order for laying out the highway was made.

Another of the commissioners cannot swear positively that he did not sign the paper when annexed to the survey, but has no recollection of ever signing it, and his recollection is that he did not. The third commissioner was not sworn, and we do not know what his recollection in regard to signing it is. But upon the evidence given on the trial it seems to me that the presumption is entirely overcome, and the finding of the jury that the paper relied upon was an order laying out the highway was without evidence to support it.

The only question remaining to be considered is whether the paper, Exhibit A, was a valid order for laying out the road.

If I am right in holding that the verdict finding the exhibit to have been properly made and filed was not only not supported by the evidence but against it, the invalidity of the order is conclusively established. But if I am wrong in this I am of opinion that it is invalid as not being made in compliance with section 70, 2 Revised Statutes(5th ed.), 394, which section is in the words following, viz. :

' Whenever the commissioners of highways shall *lay out*, alter or discontinue any road, either upon application to them or otherwise, they shall cause a survey to be made of such road, and shall incorporate such survey in an order to be signed by them and to be filed and recorded in the office of the town clerk, who shall note the time of recording the same.'

The survey was not incorporated in an order signed by the commissioners, and hence the requirement of the statute has never been

complied with. The proper protection of the public as well as of the owners or occupants of the land over which a highway is laid out requires that the commissioners should clearly designate the route of the road, its width and the determination that the road be laid out. The legislature, therefore, required a survey and an order signed by the commissioners, and that it be filed and made a matter of record so as to enable those interested to establish the existence of the road by the highest evidence the subject-matter was capable of being established by. If the order might be omitted so might the survey, and thus the public left to ascertain the existence of the road by the evidence of persons cognizant of the action of the commissioners in reference to the road. I entertain no doubt but that the omission to incorporate the survey in an order was fatal to the laying out of the road.

We have been referred to the case of *Tucker* v. *Rankin* (15 Barb., 471) in which it was held that a survey of a road signed by the commissioners was a valid order laying out the road. The case arose in the seventh judicial district, and the appeal was heard and decided in the General Term of the district. One of the judges sitting in the General Term dissented from the conclusion at which the majority arrived as to the validity of the order, together with other questions. The dissenting opinion of JOHN-SON, J., is, to my mind, conclusive against the validity of the order. The decision of the case operates as a virtual judicial repeal of the most important clause of the section cited, and is not only mischievous in its effects upon the public but fatal to the action of the public authorities in their efforts to lay out and protect the roads of their towns and the streets of their villages and cities. Although I entertain the most profound respect for the learning and ability of the judges who decided the case cited, I cannot concur with them in the conclusion at which they arrived and am constrained to disregard it.

ALLEN, J., when sitting in the General Term in the fifth district in the case of *Stewart* v. *Wallis* (30 Barb., 348), referring to one of the propositions decided in *Tucker* v. *Rankin*, says 'the reasons for the judgment in the former case (*Fitch* v. *Comrs. of Kirkland*, 22 Wend., 132) are more satisfactory to me than those of the able

judge pronouncing the opinion of the court in the latter (*Tucker* v. *Rankin*), and, therefore, I prefer to follow the first decision.'

PORTER, J., in *The People* v. *Williams* (36 N. Y., 443), referring to the case of *Tucker* v. *Rankin*, says the decision is in conflict with previous and subsequent adjudications of the court in which it was pronounced, and it has since been substantially overruled in this court.

There are other cases in which the rulings in *Tucker* v. *Rankin* have been repudiated, but not upon the specific point now under consideration. It seems to me that the case cannot be considered as binding authority upon any of the questions considered by the majority of the judges.

The conviction should be reversed, and as an order laying out the road cannot now be supplied the prisoner should be discharged."

*Stephen R. Pratt*, for the plaintiff in error.    *Watson M. Rogers*, for the defendant in error.

Opinion by MULLIN, P. J.; TALCOTT and SMITH, JJ., concurred on the ground that the record of the highway was impeached.

Conviction reversed and proceedings remitted to General Sessions of Jefferson county with directions for a new trial.